I will hear counsel in United States v. Juan Pena. Please the court, your honor, my name is Jeffrey Perry. I represent Mr. Pena in this matter. This matter comes before the court to address Mr. Pena's sentencing and the implication of an attempted assault second that was in his history, and also two robbery convictions. Since the matter was briefed, your honor, the Supreme Court has ruled in the Mathis case and this court has ruled in the Jones case, which affect this case greatly. And I would like to spend most of my time addressing those two cases. It would seem under the Jones case that we could practically take Well, the thing about Jones, you have to realize, is that the mandate has been stayed. And so it's out there, but the case has not been determined yet, finally, because there is no mandate has been stayed in that case. I know that, you know, that's not necessarily known by everybody. It was not known by me, sir. But anyway, you say that this, in effect, that Jones would govern this situation. I think he would govern it as far as his previous robbery convictions are concerned, sir. The assault matter gets more complicated, Judge. The fact of the matter is that the Mathis case, it would seem to me, obligates us to the modified categorical approach to his attempted assault conviction. And the attempted, the assault statute under New York law, your honor, has 12 separate paragraphs delineating types of assaults that, frankly, I never dreamed of. It is nowhere near a generic example of what an assault statute should be. Therefore, before we even get to the modified categorical approach, we run into a problem, which is whether or not it even applies under the ACCA. And it would seem to me, sir, that is highly doubtful. Now, this is a question of great importance that goes well beyond Mr. Pena's case. I understand that. But the federal statute requires the use of physical force. And the New York City argument you were making, as far as the assault statute was concerned, was that New York, in the New York recidivism or statutes or aggravated felony statutes, aggravated felony statutes, I use this as a shorthand term, attempt didn't count. But attempted assault is not covered under New York law, correct? If the statute just reaches assault, it doesn't reach attempt. And here, there's an attempt issue. That may well be, Judge, but unfortunately, the Mathis case sort of changes things. And the reason I say that is because the difference between, well, the assault statute itself under New York law takes an injury-based approach. And it does not even mention physical force. And when we take a look at, obviously, the federal statute, physical force is a requirement. Mathis is very clear that if we don't, if we aren't able to match up the generic elements of the New York statute with a generic assault statute, it's excluded. And we never get into what Mr. Pena did. Now, that is a question of- Did you make this argument in your brief? No, sir, I did not. I did not have the, Mathis and Jones had not been decided yet, sir. Actually, my opponent and my friend next to me is probably shooting daggers at me, Your Honor, but I made mention before the argument that we should probably re-brief this thing. But so much has happened since the briefs were filed. But I'm making an argument for the first time that I realize has great importance well and beyond Mr. Pena's case. It may very well be that the New York assault statute in its entirety is not applicable under 924. If that's the case, there's a lot of people out there that have to be resentenced. Well, that also gets to the question of whether it's retroactive. Absolutely, sir. And, Judge, I do not have the answer to this for you. I think Mr. Pena should be resentenced under Jones. I think Mr. Pena should be resentenced because the proper standard wasn't applied under Mathis. The much broader question, Your Honor, is for a better lawyer than me. Okay. You also have an argument about counsel. Do you want to pass on that? Your Honor, I would like to mention that briefly. I mean, nothing happened that was earth-shattering or significant that counsel, that he was deprived of counsel for. He just wasn't transported quickly, and he didn't have counsel in the interim. Once he got there, he had counsel. And he ended up pleading guilty with counsel's advice and so forth. I would challenge you, Your Honor, on the matter as to whether or not it didn't actually affect him. To begin with, obviously I've had numerous Sixth Amendment cases. And if you take a look at the case law in this area, pretty much the Supreme Court has ruled out any areas in litigation that are no longer critical. And the fact that Mr. Pena went for, I think it was 30 years. Well, he's going from here to upstate New York, right? Yes, sir. And he doesn't have a lawyer during that period in which he's waiting to be transported up. Yes, sir. And it's in a much less critical stage of the proceedings. No, but it has a difference at the end, sir. Because what happens in one of these conspiracy cases where I believe there was 20-some defendants, is we have basically a race to the courthouse to see who's going to plead first. And everyone got a 30-day head start over Mr. Pena. That's just a fact, sir. And it's the fact in this particular case. It is, sir. Actually, Your Honor, I think it's important for the Court to note, I didn't even know that this happened until I was preparing the appellate brief. Mr. Pena didn't have the knowledge to tell me, hey, you're the first attorney I've had any time with and I got arrested a month ago. He's a man with a sixth-grade education. Also, Judge, I think there's implications here beyond the mere defense of Mr. Pena. I've had other cases where a negligent defense attorney simply doesn't care to go see his client for three months, which I think is outrageous. I think it's unethical. And Mr. Pena, actually, regardless of what he's convicted for, he's the perfect example of why you need counsel. The man has no education, he doesn't know what happened to him, and he's sitting in jail for 30 days without having his questions answered. At some point in time, it just becomes fundamentally unjust. At the time that the plea was taken, there was no reference to this denial of counsel claim, right? Didn't know it, sir. I can't offer an excuse beyond that. I was literally briefing the case. Actually, Judge, I was preparing an Anders brief when I found out about this, and I literally had to make a motion to withdraw the Anders brief because, well, we've got some issues out there. So, did you have occasion to bring any of these concerns to Judge McAvoy's attention? Judge McAvoy... When you did your double take. No, sir. The matter was already on its way down to you folks down here. Judge McAvoy was not aware of it. I see. And, Judge, I've seen similarly things happen. Let me go back a moment. Would you maybe marshal the evidence or the record for us? What happened? Just tell us in your own words. What happened at the plea stage? In reference to the assault? Yeah. In reference to the plea, the matter to which he pleaded guilty. You mean how did it affect him, sir? No, I mean what was the proceeding like? Actually, Your Honor. What did you know? What did he know at the time? What the judge knew, Your Honor. Yeah. Actually, Your Honor, if you take a look at the transcript, I think it was a pretty detailed plea. There was a long give and take between myself and... I'm sorry, sir? You were going to file an amnesty. I was going to file an amnesty, sir. Actually, I did file an amnesty. You couldn't find any non-frivolous issues in connection with the plea? Other than the fact that I think Judge McAvoy made a mistake on the law that any of us could have made at the time, I think it was a very responsible plea. I wouldn't have had any complaints about it at all except we're operating under a different law now. Mm-hmm. Actually, Your Honor, if anything, I've got to be careful how I say this, Judge, because I... There was an allocution. It was included in the plea allocution, these prior offenses, the robberies and the assault. Was that part of the allocution? It was merely mentioned, Your Honor. There's nothing there for the... There's no dispute about it? There's no dispute that he pled to them, no. No. But also that the prior offenses I'm talking about were part of the enhanced sentence calculation under the... There was never any question but that it happened, that they were attributed to him, that sort of thing. Okay. Thanks. Thank you, sir. You've reserved two minutes. May it please the Court, my name is Rajiv Dosanjh. I represent the government in this case. I think it's important to start by clarifying what exactly is at issue in this appeal. As far as the arguments that are made in terms of the career offender enhancement, there are two specific arguments that are brought up to this Court's attention. The first is that, as the judge noted, attempted assault in the second degree under the New York State law doesn't qualify as a violent felony and therefore should not qualify under the sentencing guidelines enhancement as a crime of violence. Now that argument has been foreclosed by Walker. The other argument that is made is that the two robbery convictions that were likely the other basis for the enhancement should have been consolidated. And as we argue in the brief, there may be a question here of fact about that. But... There's one argument that's made, and that's the argument based upon the Jones decision, which is, you know, using the categorical approach to robbery, can you be sure that in every instance the robbery is going to be a violent felony? Your Honor, respectfully, that issue is nowhere in the brief. Tell that. And I don't think it's before this Court. I think this Court has said many times that issues brought up for the first time in oral argument will not be considered absent manifest injustice. And I think that term is typically reserved for cases where an innocent man may have been convicted. And here, even just the term manifest injustice, you can't have a manifest injustice if at the end of the day what has to happen is further analysis under the modified categorical approach. Well, how would... The strength of that is that the argument could have been made, even though there was no decision. That's right. And also Mathis... Unless it's going to be retroactive. That's right. I mean, the Johnson case, which kind of is kind of... And also the Decomps case. Those are all prior to the briefing in this matter. And so it could have been brought up, at the very least, in the briefs. But it would have required a degree of clairvoyance to have raised it at that point, right? I don't believe so. I mean, counsel had no way of appreciating the significance of these decisions that would come down later. Your Honor, I would disagree. I think that as the parties in Jones itself argued around the same time that Johnson has this effect, and I think this has been a very active area of litigation, as the Court knows, for quite a while. So these arguments were available. This is a very complicated area of law, but at the end of the day other attorneys have made these kind of arguments and with some success. What should he have said? Well, I think, Your Honor, I think there is a question about under, as Jones found, that robbery in the third, as I noted in our 28J letter, is likely not enough on its face under the categorical approach to justify the enhancement. The more difficult questions come in with attempted assault in the second and robbery in the second. Because of the complications of the complexity of the statute and the impossibility of knowing on the record we have which specific subsection he pleaded guilty to. So, Your Honor, I do think that these arguments were available. They are not before the Court. Mr. Pena has the remedy of a 2255 that he could bring. And although we would argue that you can't bring in the first instance, in a 2255, a sentence and challenge that you failed to raise. A bit of a catch-22. He could bring a... You're suggesting that he'd take advantage of a procedure that you are quick to explain would be fruitless. Not, well, Your Honor, I was going to continue. I hesitate to say this, but he could bring an effective assistance of counsel claim and get to the merits that way. Against himself. Well, Mr. Pena could bring... Against Mr. Perry. Yes, Your Honor. Mr. Perry should fall on his sword. Your Honor, we would, you know, I don't want to prejudge that. But, Your Honor, that is the remedy that he has available. Let me ask you whether there isn't a simple remedy of remanding to the District Court for considering all of these matters in the first instance. Isn't there some merit in having a District Court familiar with the matter fully and now familiar with the development of the law? Your Honor, again, I think this Court has been very clear in numerous cases where there's been potentially meritorious claims that claims that are not raised in the briefs and are brought up at the last moment on oral argument are simply, you have to have a manifest injustice. We don't have that here. So I think that would create an inconsistency with this Court's previous case law if it did that. So he's stuck even with a sentence that it may turn out that he's not supposed to have? Your Honor, I think he's not stuck because of the 2255 avenue that he still has. I admit that it's a narrow avenue. I would also, I mean, to the extent that the Court decides this is important, his statutory, his guidelines range under the career offender guideline was much higher. His guideline range under? Under the career offender enhancement. Yes. It was much higher. Could you just recount, because I don't recall now, what his guidelines would have been without the career offender enhancement and what they would have been under the career offender enhancement and also what he actually got? So without the career offender enhancement, he was looking at a range of 140 to 175 months. With the enhancement, which raises the criminal history category and the offense level, he was looking at a range of 262 months to 327 months. 262 to 327? That's right. And the judge imposed a sentence of 178, so three months higher than the top of the range. That is a difference, but the judge here was fully aware of the effect of the career offender guideline, didn't apply this robotically, gave it a great deal of thought. We've quoted in the brief his comments towards Mr. Pena on that and the reasons he was going to vary so far downwards. And, again, he does have a remedy in the 2255 that's still available to him. Finally, just quickly on the Sixth Amendment claim, I think the case law is very clear that a guilty plea waives all non-jurisdictional effects. There's been no argument that ties the 30 days or so that he was without an attorney to his plea much later, guilty plea, when he had very vigorous representation of counsel. And in that way, I think you're referring to Mr. Perry? On that issue. I want to make sure. Yes, Your Honor. He was very vigorous then, but not very vigorous in some other time. Again, Your Honor, I think it's an issue that could have been raised and wasn't at sentencing. But at the guilt phase, I think he was very active and got a second attorney to be appointed to help him with trial and ultimately decided not to go to trial. So the point is that the plea itself was knowing and voluntary. There's no dispute of that with the advice of counsel. In any event, if the court finds that even if it's not waived, you're still under plain error here. And I don't think there's any basis to say it's obvious that the denial of counsel for those 30 days was prejudicial here or affected a critical stage in the process. Do you think as an equitable matter it would be wise to take Judge Cabrera's suggestion of remanding and having the judge look it all over based on case law, new developments? Do you think that would be the fair thing to do? Your Honor, I think given the manner in which, and I'm going to be editorializing here, the way the case law is developed, I think the equities here are more ambiguous. I think it's not the case where someone's being convicted of a crime that they didn't commit. It's we're in this world after Johnson and after Mathis where real-world facts don't seem to matter anymore, and we're on this kind of hypothetical road. So, Your Honor, I would hesitate to say. The rest of the world is very unclear, actually, you know, what's coming next and, you know, what's going to be retroactive and what sentence is going to be lowered. There's a lot in the air. So wouldn't the fairest thing to do be to send it back to the judge? What would be wrong with doing that? I think, again, Your Honor, because of the concerns that this Court has expressed of, you know, encouraging the arguments to be raised fully and the concern with finality, that when an argument is kind of pops up at the very end of an appeal, that you don't remand unless there's a manifest injustice. And, again, I just don't see a manifest injustice that was committed here. We'd have to know more. And that can be explored through a 2255, because one of the issues that he's going to have to raise is that there was a prejudice and that his claim was valid. So those merits issues will be before the Court below. Give me the timeline, if you would, again. I know it's in your briefs, but so Mathis comes down when? One second, Your Honor. Mathis was issued on June 23rd of 2016. June 23rd, 2016. This is a week after the government filed its brief in this case. Right. And then our panel in United States against Jones comes in July, about a month later, right? That's right. And when is the sentencing? I'm sorry, what's that? When was the sentencing here? The sentencing, Your Honor. One second. The sentencing was on August 18th, 2015. 2015. That's right. Had the other cases or either of them been briefed? Where were the other cases in the scheme of things? Does it say Jones and Mathis? Jones was argued, Your Honor, before this Court on April 2016. The appellant in Jones filed his brief in October of 2015. October. Right now, that's the information I have. I would assume that the briefing occurred according to the regular schedule. So 90 days later, there's a response. In 15 days, there was a reply. Unless the Court has any further questions. So, Mr. Perry, why don't you tell us what you think this Court can do for you or your client under the circumstances? Your Honor, I would be delighted. And I would also feel constrained, Your Honor, to defend myself a little bit here. Thirty years of litigation, and I've never had my integrity questioned once. If the Court has any question as to what I did or why I did it, I would be glad to entertain them as well. No, I'm just asking. Not at all, not at all. I don't want it to be understood or thought that anyone on the bench has made any such suggestion. No, I didn't get it from the Counsel. I think opposing Counsel wasn't making that suggestion either. He was simply pointing out the procedural routes that might be available to you, which he was suggesting that self-immolation was an appropriate, an appropriate. Your Honor, I'm a little old to jump on my sword. I can't jump that far anymore. Tell me, what decree do you want from us? What is it that this Court, what would be the last two or three sentences of a putative order from us? Your Honor, I genuinely believe we need to get this right. And I think if you send it back, Judge McAvoy is actually going to be able to address these issues. I'm actually going to be able to address these issues. You didn't say send it back for resentencing. Send it back for resentencing. Yes, Judge. Give us a start over. And I know that sounds a little bit unscholarly, but I haven't given you a brief you can really work with. Judge McAvoy really hasn't had a bite of the apple of this. We don't have the stuff. And we're going to flail around out there and make a mistake that's going to have ramifications in a few hundred other cases. I don't think that's smart. Now, you were appointed under the CJA? I was, sir. In the district court as well as here? Yes, sir. All right. So if there were such a remand, you would continue to serve as counsel? If they'll have me, sir. Excuse me? If they'll have me. Why not? Well, I don't know, sir. Nobody has suggested otherwise. Judge, I Let the record show that no one has suggested otherwise. Oh, Your Honor, no. I did not get that from the bench. And I just was a little taken back. And if I overstated my position, I'm sorry. We'll certainly keep you if you get the case brought back to the district court. Well, I'd like another shot at it, sir. Also, Judge, I would like to mention, as a very real issue, I was aware at sentencing. I knew very well that robbery is a violent felony under New York law. And I knew about the Spencer case. And making that objection was simply inappropriate. It was just wrong. Okay. Okay. Very well. Thank you very much. We'll reserve decision.